IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILL MCLEMORE; MCLEMORE AUCTION COMPANY, LLC; RON BRAJKOVICH; JUSTIN SMITH; BLAKE KIMBALL<br><br>PLAINTIFFS,<br><br>V.<br><br>ROXANA GUIMUCO, IN HER OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR OF THE TENNESSEE AUCTIONEER COMMISSION; THE ASSISTANT DIRECTOR OF THE TENNESSEE AUCTIONEER COMMISION, IN HIS OFFICAL CAPACITY; KIMBALL STERLING, JEFF MORRIS, LARRY SIMS, ED KNIGHT, DWAYNE ROGERS, IN THEIR OFFICAL CAPACITIES AS MEMBERS OF THE TENNESSEE AUCTIONEER COMMISSION<br><br>DEFENDANTS. | Case No. _____ |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**INTRODUCTION**

1. The First Amendment prohibits the government from forcing individuals to get a license to speak. The Tennessee law at issue, however, imposes a licensing requirement on online auctioneers who earn a living through speech. *See* 2019 Tenn. Pub. Acts, Ch. 471 (PC 471 or the Tennessee online auction licensing requirement). Auctioneers communicate not only information about price but also descriptions of products for sale at auction.

2. Plaintiffs conduct online auctions, a practice that has flourished in Tennessee since 2006 when Tennessee enacted an exemption for "timed listings that allow bidding on an internet

1

website." The exemption had the effect of permitting online auctioneers to conduct auctions without a license. In 2019, Tennessee amended its laws to require licenses for online auctioneers who, like Plaintiffs, conduct extended-time online auctions. *See* PC 471, § 4 (emphasis added), codified at Tenn. Code Ann. § 62-19-101(2). Yet it continued to exempt fixed-time auction websites, like eBay, from the licensing requirement. According to Tennessee's Auctioneer Modernization Task Force, extended-time online auctions have not been much of a problem. In the three fiscal years prior to 2019, only three out of 117 auctioneer complaints have concerned extended-time online auctions.

3. In 2019, Plaintiffs Will McLemore and McLemore Auction Company, LLC, filed a lawsuit in this Court (*McLemore I*). Plaintiffs alleged that PC 471 violated the First Amendment and the dormant Commerce Clause. The Court granted preliminary and permanent injunctions on the ground that PC 471 violated the dormant Commerce Clause. The United States Court of Appeals for the Sixth Circuit then reversed and ordered this Court to dismiss the entire case without addressing Plaintiffs' First Amendment claim. Yet it is impossible to auctioneer without communicating a message, and Plaintiffs Will McLemore and McLemore Auction Company, LLC, now seek a ruling on their First Amendment claim. Plaintiffs Ron Brajkovich, Justin Smith, and Blake Kimball were not plaintiffs in *McLemore I*. As unlicensed online auctioneers who have been operating in Tennessee, but who are now without the benefit of this Court's injunction, they face imminent civil and criminal punishment merely because they wish to continue to earn an honest living through speaking.

**JURISDICTION AND VENUE**

4. Plaintiffs bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for the violation of rights secured by the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment.

5. This Court has jurisdiction over this federal claim under 28 U.S.C. § 1331 (federal question and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

7. Plaintiff Will McLemore is a licensed auctioneer. Mr. McLemore founded Plaintiff McLemore Auction Company, LLC, in 2006. Today, Mr. McLemore is the president and sole member of Plaintiff McLemore Auction Company, LLC.

8. Plaintiff McLemore Auction Company, LLC, is a Tennessee limited liability company in good standing.

9. Plaintiff Ron Brajkovich is employed by McLemore Auction Company, LLC. Mr. Brajkovich conducts online auctions in Tennessee and does not possess a Tennessee auctioneer license.

10. Plaintiff Justin Smith is employed by McLemore Auction Company, LLC. Mr. Smith conducts online auctions in Tennessee and does not possess a Tennessee auctioneer license.

11. Plaintiff Blake Kimball is employed by McLemore Auction Company, LLC. Mr. Kimball conducts online auctions in Tennessee and does not possess a Tennessee auctioneer license.

12. The Tennessee Auctioneer Commission licenses auctioneers. Tennessee law grants the Commission the power to enforce Tennessee Code Title 62, Chapter 19, which governs auctioneers. The Commission has the power to make bylaws, rules, and regulations that are not inconsistent with Tennessee law.

3

13. The Executive Director of the Tennessee Auctioneer Commission implements and enforces the Act and the rules promulgated by the Commission. The Executive Director may delegate that authority to the Assistant Director of the Tennessee Auctioneer Commission. The Executive Director, the Assistant Director, and the members of the Tennessee Auctioneer Commission share ultimate responsibility for implementing and enforcing laws and regulations related to auctioneering. Those laws and regulations prohibit Plaintiffs from conducting online auctions without having an auctioneering license.

14. Defendant Roxana Gumucio is the Executive Director of the Tennessee Auctioneer Commission. She is sued in her official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

15. Defendant Assistant Director of the Tennessee Auctioneer Commission is sued in its official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908). The position is currently vacant.

16. Defendant Kimball Sterling is the Chair of the Tennessee Auctioneer Commission. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

17. Defendant Jeff Morris is the Vice Chair of the Tennessee Auctioneer Commission. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

18. Defendant Larry Sims is a member of the Tennessee Auctioneer Commission. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

19. Defendant Ed Knight is the Chair of the Tennessee Auctioneer Commission. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

20. Defendant Dwayne Rogers is the Chair of the Tennessee Auctioneer Commission. He is sued in his official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

# FACTUAL ALLEGATIONS

**Plaintiffs' Free Speech Interests**

21. Speech is an essential part of auctioneering. As Defendant Gumucio previously testified at deposition, it is impossible to have an auction without an oral, written, or electronic communication.

22. Individuals who are seeking to purchase items at an online auction cannot physically see the items up for auction.

23. Auctioneers create narratives, images, and descriptions that are designed to influence bidding activity by informing the audience about unique conditions and characteristics of goods and real estate.

24. The narratives that auctioneers create for items in an auction may include information about the item's historical significance.

25. An auctioneer may compose a narrative describing the importance of an artist if the auctioneer is auctioning a work of art created by that artist.

26. An auctioneer may create a narrative about an auctioned item's previous owner if the auctioneer believes that the narrative would make the item more appealing to consumers. McLemore Auction Company, LLC, previously created a listing that emphasized the item's previous owner: Jim Thiel. Mr. Thiel was a revered speaker designer who used the auctioned items in his lab before his death. McLemore Auction Company, LLC, chose to incorporate information about Mr. Thiel in its descriptions of the auctioned items because it believed that doing so would make the items more desirable to high-end enthusiasts.

27. McLemore Auction Company, LLC, has created narratives detailing the significance of items that it had auctioned in the past.

28. The narratives created by an auction company can affect the price at which the items are sold. Absent these narratives on an online auction company's website, the invitation for audience members to purchase would be less informative, less interesting, and less enticing.

**Tennessee's Online Auction Licensing Requirement**

29. Before Tennessee enacted PC 471 in 2019, individuals who only conducted online auctions were typically not required to hold an auctioneer license.

30. In 2006, the Tennessee General Assembly passed an exemption to the auctioneering laws for "fixed price or timed listings that allow bidding on an Internet web site but that does not constitute a simulcast of a live auction."

31. In 2016, the Tennessee Auctioneer Commission determined that Mr. McLemore's extended-time online auctions fell under the statutory exemption for timed listings that does not constitute a simulcast of a live auction.

32. In 2018, the Tennessee General Assembly enacted legislation creating the Tennessee Task Force on Auction Law Modernization.

33. At a meeting in August 2018, members of the Task Force publicly stated that they did not know how members of the public had been harmed by online auctions. At the same meeting, members of the Task Force also stated that online auctions need to be regulated because it was a growing model for auctions.

34. The Task Force generated a report cataloguing the number of complaints about auctioneers. The report included the total number of complaints in fiscal years 2016, 2017, and 2018. During that time, there were 117 complaints about auctioneers, 15 complaints about online auctions, and 3 complaints regarding online auctions with extended time endings.

35. In 2019, Tennessee enacted 2019 Tenn. Pub. Ch. 471 (PC 471). The Act amends Tennessee Code Annotated Title 62, Chapter 19, which governs auctions.

36. PC 471 changed the statutory definition of an auction. It defines an auction as a sales transaction "conducted by oral, written, or electronic exchange between an auctioneer and members of the audience consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience." Tenn. Code Ann. § 62-19-101(2).

37. Tennessee law makes it unlawful for a person to: "[a]ct as, advertise as, or represent to be an auctioneer without holding a valid license issued by the commission." *Id.* § 62-19-101(a)(1).

38. Tennessee law specifies that "[a]ll auctions arranged by or through a principal auctioneer must be conducted exclusively by individuals licensed under this chapter." *Id.* § 62-19-101(b).

39. Tennessee law continues to grant an exemption, from the licensing requirement, for "[a]ny fixed price or timed listings that allow bidding on an internet website, but do not constitute a simulcast of a live auction." *Id.* § 62-19-103(9). Yet PC 471 changed the definition of "timed listing," which is now defined as "offering goods for sale with a fixed ending time and date that does not extend based on bidding activity." *Id.* § 62-19-101(12).

40. Under the new definition of "timed listing," extended-time online auction websites like McLemore Auction Company, LLC, will require a license, and fixed-time format websites like eBay, will not.

41. A violation of Tennessee auctioneering laws, rules, regulations is a Class C misdemeanor. A Class C misdemeanor is considered a crime and is punishable by 30 days of jail time, $50 in fines, or both.

42. Defendants are empowered to assess a civil penalty of no less than $50 and up to $2,500 for each violation of the Tennessee auctioneering laws.

43. Defendants are empowered to assess a civil penalty of up to $1,000 per day for unlicensed activity, or for violating a Commission rule or order.

**The Effect of Tennessee's Online Auction Licensing Requirement on Plaintiffs**

44. Plaintiff Ron Brajkovich conducts online auctions and does not hold an auctioneer license. Mr. Brajkovich cannot avail himself of any of the exemptions to the licensing requirement listed in Tenn Code Ann. § 62-19-103. PC 471 subjects Mr. Brajkovich to civil and criminal penalties.

45. Plaintiff Justin Smith conducts online auctions and does not hold an auctioneer license. Mr. Smith cannot avail himself of any of the exemptions to the licensing requirement listed in Tenn Code Ann. § 62-19-103. PC 471 subjects Mr. Smith to civil and criminal penalties.

46. Plaintiff Blake Kimball conducts online auctions and does not hold an auctioneer license. Mr. Kimball cannot avail himself of any of the exemptions to the licensing requirement listed in Tenn Code Ann. § 62-19-103. PC 471 subjects Mr. Kimball to civil and criminal penalties.

47. Plaintiffs Will McLemore and McLemore Auction Company, LLC, have never required individuals working at McLemore Auction Company, LLC, to acquire an auctioneer license if such individuals only conduct online auctions. The extended-time auctions that McLemore Auction Company, LLC, conduct had been exempt from the licensing requirement before 2019. PC 471 changed the definition of "timed listing" and therefore changed the exemption for "fixed price or timed listings that allow bidding on an Internet web site but that does not constitute a simulcast of a live auction." After PC 471, online auctions with extended-time listings are subject to the licensing requirement.

48. Unlicensed online auctioneers employed by Plaintiffs Will McLemore and McLemore Auction Company, LLC, have worked reliably for Mr. McLemore and McLemore Auction Company, LLC, for a long time. Therefore, PC 471 imposes economic and personal costs on Mr. McLemore and McLemore Auction Company, LLC, because it makes it illegal for unlicensed online auctioneers already working for McLemore Auction Company, LLC, to continue to conduct online auctions.

49. Shortly after Tennessee enacted PC 471, Mr. McLemore obtained a preliminary injunction from this Court. The court subsequently issued a permanent injunction in favor of Mr. McLemore, and concluded that the law violates the dormant Commerce Clause. The Sixth Circuit Court of Appeals reversed and remanded with instructions to dismiss. Because the district court's prior injunction is no longer in effect, Plaintiffs are faced with the imminent threat of civil and criminal penalties.

**CLAIM FOR RELIEF**

**FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**

50. Auctioneering is protected by the First Amendment.

51. An online auction consists of messages made by a speaker to an audience. The messages include a series of invitations for audience members to purchase goods or real estate, culminating in acceptance of the highest or most favorable offer.

52. Online auction listings consist of narratives, including descriptions and photographs designed to make an item more enticing to a bidder.

53. Listings for items of historical or collector significance includes descriptions of the item's history or value to a collector.

54. If the website listing on an online auction did not include these narratives, images, or descriptions, then the listing would generate less bidding activity.

55. PC 471 imposes content-based and speaker-based restrictions on speech.

56. PC 471 restricts speech related to an auction, which the law defines as "a sales transaction conducted by oral, written, or electronic exchange between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience."

57. PC 471 exempts speech from the licensing requirement on the basis of the content. It exempts, among other exemptions, "[a]n auction conducted by or on behalf of a political party, church, or charitable corporation or association, if the individual conducting the sale receives no compensation and does not, by advertising or otherwise, hold their self out as available to engage in the sale of goods at auction" and auctions "whose primary business activity is selling nonrepairable or salvage vehicles" and holds the appropriate license issued by the Tennessee motor vehicle commission. *See* Tenn. Code Ann. § 62-19-103 (listing 12 exemptions).

58. PC 471 requires a license for extended-time online auction websites like McLemore Auction Company, LLC. It does not require a license for fixed-time format websites like eBay.

59. The Tennessee online auction licensing requirement suppresses truthful speech about the sale of lawful items.

60. The Tennessee online auction licensing requirement is not reasonably related to preventing or correcting any misleading or deceptive speech.

61. Tennessee's interest in licensing online auctions is not legitimate, substantial, or compelling.

62. The Tennessee online auction licensure requirement is not appropriately tailored to any government interest.

63. The Tennessee online auction licensure requirement does not directly or materially advance any legitimate government interest.

64. Defendants currently maintain and actively enforce a set of laws, rules, practices, policies, and procedures under color of state law that deprive Plaintiffs of their right to freedom of speech, in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

65. Plaintiffs have no adequate remedy at law to compensate for the loss of these fundamental freedoms and will suffer irreparable injury absent an injunction restraining the Defendants' enforcement of the law complained of in this action. Plaintiffs are therefore entitled to injunctive and declaratory relief.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

1. Enjoin Defendants, their employees, agents, successors, assigns, and all persons acting in concert with them, from enforcing the Tennessee online auction licensing requirement, and applying Tennessee's auctioneering laws, licenses, and regulations to "sales transaction[s] conducted by . . . *electronic exchange* between an auctioneer and members of the audience, consisting of a series of invitations by the auctioneer for offers to members of the audience to purchase goods or real estate, culminating in the acceptance by the auctioneer of the highest or most favorable offer made by a member of the participating audience." 2019 Tenn. Pub. Acts, Ch. 471, § 4 (emphasis added), codified at Tenn. Code Ann. § 62-19-101(2);

2. Declare the Tennessee online auction licensing requirement unconstitutional under the First Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment to the United States Constitution;

3. An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

4. Such other relief as the Court deems just and proper.

DATED: September 25, 2023

Respectfully submitted,

s/ David L. Harbin
David L. Harbin
B.P.R. No. 009477
da.harbin@comcast.net
Senior Legal Fellow
BEACON CENTER OF TENNESSEE
1200 Clinton Street, #205
Nashville, TN 37203
Tel.: 615-390-6991
Fax: 615-383-6432
Counsel for Plaintiffs

## VERIFICATION

I, WILL MCLEMORE, hereby declare as follows:

I am one of the plaintiffs in this action, and president and sole member of Plaintiff McLemore Auction Company, LLC.

I have read the Verified Complaint for Injunctive and Declaratory Relief and know its contents. The facts alleged in this matter are within my own personal knowledge, and I know these facts to be true, except for matters stated on information and belief and, as to such matters, I reasonably believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the factual statements are true and correct. If called upon, I would competently testify to them. This Verification was executed this 18th day of September 2023, in Nashville, Tennessee.

WILL MCLEMORE

# VERIFICATION

I, RON BLAJKOVICH, hereby declare as follows:

I am one of the plaintiffs in this action.

I have read the Verified Complaint for Injunctive and Declaratory Relief and know its contents. The facts alleged in this matter are within my own personal knowledge, and I know these facts to be true, except for matters stated on information and belief and, as to such matters, I reasonably believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the factual statements are true and correct. If called upon, I would competently testify to them. This Verification was executed this 21st day of September 2023, in Summertown, Tennessee.

RON BLAJKOVICH

## VERIFICATION

I, JUSTIN SMITH, hereby declare as follows:

I am one of the plaintiffs in this action.

I have read the Verified Complaint for Injunctive and Declaratory Relief and know its contents. The facts alleged in this matter are within my own personal knowledge, and I know these facts to be true, except for matters stated on information and belief and, as to such matters, I reasonably believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the factual statements are true and correct. If called upon, I would competently testify to them. This Verification was executed this 18th day of September 2023, in Nashville, Tennessee.

_____
JUSTIN SMITH

## VERIFICATION

I, Blake Kimball, hereby declare as follows:

I am one of the plaintiffs in this action.

I have read the Verified Complaint for Injunctive and Declaratory Relief and know its contents. The facts alleged in this matter are within my own personal knowledge, and I know these facts to be true, except for matters stated on information and belief and, as to such matters, I reasonably believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the factual statements are true and correct. If called upon, I would competently testify to them. This Verification was executed this 22 day of September 2023, in Nashville, Tennessee.

_____
BLAKE KIMBALL